C. F. (John) ALEXANDER, Appellant,

v.

George E. GILKERSON, Appellee.

No. 4237.

Court of Civil Appeals of Texas.

Eastland.

Sept. 27, 1968.

Rehearing Denied Oct. 18, 1968.

Thomas C. Ferguson, Johnson City, R. E. Lee, Mason, John O. Harris, Coleman, for appellant.

J. Edward Johnson, Brownwood, H. O. Woodward, Woodward & Johnson, Coleman, Marvin F. Sentell, Asst. Atty. Gen., Austin, for appellee.

COLLINGS, Justice.

This case was tried upon an amended original petition filed by C. F. (John) Alexander against George E. Gilkerson, individually and as trustee for the benefit of the "Bill and Dick Alexander Foundation", seeking to have held void certain instruments signed by W. S. (Dick) Alexander, now deceased, and asserting a constructive or implied trust in approximately 1100 acres of land in Brown County. At a pre-trial conference the court sustained a special exception dismissing George E. Gilkerson individually as a party. The trial was before a jury which found that W. S. (Dick) Alexander, a brother of the plaintiff, at the time of the execution of the deed to him by plaintiff and his wife conveying their interest and expectancy in the 1100 acres in question did not, in consideration thereof, promise plaintiff that such land would go to the survivor of them and that whichever one of the two brothers should outlive the other would have the property. Based upon the verdict and other matters urged in defendant's motion, judgment was rendered for defendant. C. F. (John) Alexander has appealed.

The background of this case and appellant's contentions in connection therewith as shown by the pleadings and evidence is that W. G. Alexander, Sr. and his wife, Agnes Blythe Alexander, were parents of the following children:·

Dorsey Alexander who died when about 7 years of age.

Ella G. Alexander who never married and who died intestate on December 5, 1954.

W. G. Alexander, Jr., known and hereafter referred to as "Bill" Alexander, who was married to Melrose Alexander, and who died intestate and without issue on May 6, 1954. His wife later married Clyde Mitchell and is still living.

W. S. Alexander, generally known and hereafter referred to as "Dick" Alexander, who died May 4, 1965, in Brown County without ever having been married and without issue, leaving a will which has been probated in Brown County.

Appellant, C. F. Alexander, who is generally known and hereafter referred to as "John" Alexander. He is married and his wife is Ethyl Alexander. Appellant and his wife have no children and now reside in San Saba County.

W. G. Alexander, Sr. had been married one time prior to his marriage with Agnes Blythe Alexander. The prior marriage was terminated by the death of that wife, and by which marriage W. G. Alexander, Sr. had only one child, a son named Schuyler G. Alexander, who was physically unable to do hard work.

W. G. Alexander, Sr. and his wife, Agnes B., moved to Brown County over 80 years ago and over a period of years acquired the land here in controversy. W. G. Alexander, Sr. died in 1913 in Brown County and devised his estate to his surviving wife, Agnes B. Alexander. Mrs. Agnes B. Alexander died in Brown County intestate leaving as her sole and only heirs at law her surviving children Ella G., Bill, Dick, and John Alexander. Schuyler G. Alexander was never married and died intestate in 1951.

W. G. Alexander, Sr. and his wife, Agnes B. Alexander, shortly after moving into Brown County began acquiring component tracts of the 1100 acres which is the subject of this law suit. Actually they acquired about 1400 acres but Camp Bowie, which was located at the edge of Brownwood, took about 300 acres and 30 acres was conveyed to Melrose Alexander where she now lives.

W. G. Alexander, Sr. started in the dairy and ranching business but eventually concentrated on ranching. The three sons, Bill Alexander, Dick Alexander and John Alexander, for many years worked together in the family business. The Alexander family ranching endeavors extended over a large area and at times included ranches in Brown, Coleman, Concho, Menard and Comanche Counties. In 1934 they acquired approximately 4500 acres in Comanche County. The Alexander children were partners in the business up until 1937 and kept all profits together. Until that time the family association was very close.

In 1937 a suit was filed by Bill Alexander in the District Court of Brown County and the lands owned by the four Alexander children were partitioned among them. Fifteen hundred and fifty acres in Comanche County was set aside and deeded to appellent, John Alexander. About 2 years later appellant sold his 1550 acres in Comanche County and purchased a ranch in San Saba County where he has since resided. By various conveyances from the heirs, Ella G. Alexander became owner of 3076 acres in Comanche County and a ⅔rds interest in the land in Brown County. Bill Alexander became owner of the other ⅓rd of the Brown County land.

W. B. (Bill) Alexander died intestate in May, 1954, in Brown County and left surviving his wife, Melrose. There were no children. At the time of his death he owned the ⅓rd interest in the Brown County land as his own separate property. His wife, Melrose, inherited one-half of his one-third interest and the other one-half passed to his brothers, John and Dick, and his sister, Ella G. Shortly after the death of Bill, Dick Alexander and Bill's widow, Melrose Alexander, entered into an agreement whereby Dick agreed to pay Melrose $150.00 per month as long as she lived in consideration of her agreement to sign a deed conveying to him her interest in the Brown County land. Appellant, John Alexander, who was present at the time of the agreement, testified that a very short time thereafter Dick told him, and that it was agreed, that if he, John, would sign his interest in the 1100 acres over to Dick for his lifetime, that if he survived Dick, then he, John, was to have all the land.

During June of 1954, Dick Alexander began a transaction with the Dudley brothers to sell them the 3,076 acre tract in Comanche County which was owned by Ella G. Alexander. At the time Ella G. was bedridden and helpless and there was also evidence to the effect that she was mentally incompetent to execute a deed. Bill Alexander and Ella G. Alexander had given Dick Alexander their power of attorney in 1938. The Dudley brothers, however, did not want to accept title under the power of attorney alone so they requested that Dick Alexander and John and Ethyl Alexander join Ella G. in signing the deed. Dick Alexander, who had discussed the matter with the Dudley brothers, asked appellant and his wife to sign the deed and they agreed to do so. So on June 16, 1954, Melrose Alexander, appellant, John Alexander, and wife signed a deed conveying to the Dudleys their interest and expectancy in Ella G. Alexander's 3076 acre tract in Comanche County. On the same date Dick Alexander signed a deed, individually and as agent and attorney-in-fact for Ella G. Alexander, conveying such land to the Dudleys. The consideration was $145,000.00, paid by the assumption of $38,370.00 indebtedness held by the Federal Land Bank, cash in the amount of $25,000.00 and vendor's lien notes payable to Ella G. Alexander in the sum of $81,630.00.

On August 18, 1954, Mrs. Melrose Alexander and appellant, John Alexander and his wife, Ethyl, signed the deed to Dick Alexander conveying to him the interest of Melrose in the 1100 acres in Brown County, including all of appellant's interest and expectancy therein. In December of 1954, about four months after execution of such deed, Miss Ella G. Alexander died intestate. Because of the conveyance of the expectancy by John Alexander to Dick Alexander, the deed was effective to vest in Dick Alexander the 5/12ths undivided interest in the 1100 acres of Brown County land which John would have owned except for the conveyance of his interest and expectancy from the estates of Bill and Ella G. Alexander.

Appellant alleged and testified that on the day the deed was signed, while the parties were on their way to the office of the Notary Public, Dick Alexander told appellant and his wife, Ethyl, that he wanted the land to stay in the Alexander family and that if appellant and his wife would sign the deed to him, that when he, Dick, died appellant would be his only heir and have the entire property. Appellant and his wife testified that they relied upon the statements and promises of Dick Alexander in signing the deed; that appellant did not receive any money at the time of signing the deed or at any other time and never received any part of the $1,800.00 which was payable annually to Mrs. Melrose Alexander; that he received no consideration whatever except the promise that if he, John, outlived Dick Alexander he would get the land; that by reason thereof Dick Alexander became a trustee, holding such land in trust for appellant, John Alexander. On April 11, 1965, Dick Alexander executed the instrument entitled "The Bill and Dick Alexander Foundation" creating a charitable trusteeship, naming appellee, George E. Gilkerson, as trustee and conveying to such trust the 1100 acres described in the 1954 deed from Melrose Alexander and John Alexander and his wife. Appellants assert that they are entitled to recover their claimed interest in said land free of all claims resulting from the purported trust conveyance and donation to the foundation by Dick Alexander.

As heretofore noted, the basis of the judgment was the finding of the jury in answer to special issue number 1 which inquired whether Dick Alexander told John, in substance, that if John and his wife would deed their interest and expectancy in said land to Dick, the land should then go to the survivor who would, after the death of the other, own the entire property. The jury answered this issue in the negative. In appellant's first 4 points it is contended that the court erred in rendering judgment against him because (1) the uncontradicted evidence required a judgment for appellant for recovery of an undivided 5/12ths interest in the 1100 acres of land in question, that (2) there is no evidence, and (3) insufficient evidence to support the judgment, and (4) that the verdict upon which the judgment is based is against the great weight and preponderance of the evidence.

Appellant tried and submitted his case upon the theory of a constructive trust. He seeks to invoke the rule that equity will impose a constructive trust to prevent one who obtains property by fraudulent means from being unjustly enriched. He urged in his pleadings and testimony that there was (1) an express oral promise by the decedent, Dick Alexander, that if appellant outlived him the land would go to appellant, and that, although such express promise was not enforceable at law because of the Statute of Frauds and the Texas Trust Act, nevertheless, (2) because of the confidential relationship between the parties (3) and to prevent unjust enrichment, equity would make Dick Alexander a trustee.

Appellant's contention is, in effect, that the uncontradicted evidence and the great weight and preponderance of the evidence show that the Brown County land had a particular significance to the four Alex-

ander children; that it was the old home place of the family which their parents began to acquire eighty years ago when they first came to Brown County; that the parents and their children worked together as a family unit and by their joint efforts earned and paid for the land in controversy; that the children with their parents, while they lived, formed a partnership; and that appellant ran the ranches away from home; that Bill Alexander ran the home ranch, Ella G. Alexander looked after the home and their mother and Dick Alexander looked after financial affairs and the buying and selling of livestock; that prior to execution of the deed in question there was a general family discussion and understanding that the home ranch was to stay in the Alexander name as long as any of the four children survived; that both Dick Alexander and appellant, John Alexander, were aware of and were parties to this understanding; and that by reason of the strong family attachment and the circumstances shown a confidential relationship existed between them; that Dick Alexander told appellant that if he would convey all his interest in the land, including his expectancy as an heir of Ella G. Alexander, the survivor of them should have the entire 1100 acres; that appellant and his wife relied upon said promise of Dick Alexander and conveyed to him appellant's interest and expectancy in the land without any other consideration; that Dick Alexander did not comply with his promise but conveyed the land to the "Bill and Dick Alexander Foundation". Appellant contends that law and equity therefore impose a trust against the interest in the land so conveyed in order to maintain right and justice and to prevent the unjust enrichment of Dick Alexander and appellee, his voluntary donee.

In Restatement of the Law of Trusts, Vol. 1, Sec. 44, at page 135, the text states:

"(1) Where the owner of an interest in land transfers it inter vivos to another in trust for the transferor, but no memorandum property evidencing the intention to create a trust is signed, and the transferee refuses to perform the trust, the transferee holds the interest upon a constructive trust for the transferor, if (a) the transfer was procured by fraud, duress, undue influence or mistake, or (b) the transferee at the time of the transfer was in a confidential relationship to the transferor, or * * *."

Mills v. Gray, 147 Tex. 33, 210 S.W.2d 985, (1948) quotes the above with approval.

■ Appellant's first 4 points are overruled. The answer to issue 1 required the judgment rendered unless the evidence was conclusive to the contrary. The evidence is not conclusive to the contrary, nor is the answer to the issue against the great weight and preponderance of the evidence. The only testimony that Dick told or promised John that if he would sign the deed conveying his interest and expectancy in the Brown County land, that the land should then go to the survivor was by appellant and his wife, and they were interested parties. Dick Alexander was deceased and couldn't testify. Appellants' testimony concerning what Dick told them was not conclusive. 62 Tex.Jur.2d, pages 456–464. The record shows numerous facts and circumstances and acts of Dick Alexander during his lifetime which are inconsistent with appellant's testimony. Appellant does not contend that there was duress, undue influence or mistake, but only that the record conclusively shows fraud. The contention cannot be sustained. There was no conclusive showing of a false representation. Since no false representation is shown and the existence of the alleged promise by Dick Alexander relied upon by appellant as a basis for his claim of fraud has not been established, there is no basis for a constructive trust. The court, therefore, did not err in rendering judgment for appellee. The burden of proof was on appellant to establish the affirmative of such issue and he has not met the burden.

■■ In appellant's 5th point it is contended that the court erred in dismissing

George E. Gilkerson as a party defendant in his individual capacity. In our opinion, the point is not well taken. The property in question was not conveyed to Gilkerson individually, but as a trustee for the benefit of the "Bill and Dick Alexander Foundation". There is no allegation that Gilkerson, as trustee, has sold, mismanaged, misappropriated or dissipated any of the property or that he makes any personal claim thereto. Appellant did in a pleading assert that decedent Dick Alexander would not have breached his alleged promise if it had not been for the intervention of Gilkerson. Such pleading, however, was stricken on appellee's exceptions thereto asserting that the matter of undue influence had been finally adjudicated against appellant in another action. Appellant has assigned no error complaining of the action of the court in sustaining such exceptions. The point is overruled. For the same reason appellant's points 7 and 8 complaining of the court's refusal to permit appellant's attorney to cross-examine Gilkerson and to interrogate him out of the presence of the jury concerning several provisions in the document establishing the "Bill and Dick Alexander Foundation" and to argue such provisions to the jury are not well taken. The trust instrument speaks for itself.

■ In appellant's 6th point it is contended that the court erred in sustaining appellee's objections to and refusing to permit appellant to prove (1) that Dick Alexander had written a letter in 1957 directing appellant to give certain money to Jill Westerman out of his estate and to settle the estate within a specified time, and (2) that Dick Alexander on November 17, 1962, told Dr. Spencer, his personal physician, after he had been injured in a car wreck, that if he, Dick Alexander, lost his mental or physical facilities he wanted appellant and his wife to look after him and his business. In our opinion this point is not well taken. The question before the court was whether or not Dick Alexander made the alleged promises in 1954 and whether or not such promises created a trust against the property in question. The letter which appellant sought to introduce does not refer to the property. The letter does not confirm or deny that the alleged promise was made. If the letter was material in any way to the question in controversy, such materiality was slight and no reversible error is presented. The status of the statement by Dick Alexander to Dr. Spencer is the same as that of the letter. Such evidence neither confirms nor denies that the alleged promise in controversy was made in 1954. As a general rule, evidence will be deemed relevant and material only if it tends to prove or disprove any fact in issue. Volume 23, Texas Jur.2d, pages 178–179. The point is overruled.

■ Appellant's point number 9 asserts that the court erred in refusing to sustain his motion for a new trial because of various arguments made by attorneys for appellee. We find no reversible error in the arguments complained of. Most of the arguments were made without objection, or request for an instruction not to consider. The rule in such cases is stated in Younger Brothers, Inc. v. Myers, 159 Tex. 585, 324 S.W.2d 546, (1959) as follows:

"During the heat of trial extravagant and ill-considered statements are often made. The prejudice resulting from such remarks can generally be removed by an admonition to the jury from the presiding judge and we are unwilling to accede to the proposition that juries pay little or no attention to the instructions of trial judges. We do not regard the improper argument made in this case as being beyond correction by means of a proper instruction."

Appellant's points are all overruled. The judgment is affirmed.